Filed 11/3/15  P. v. Williams CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ERIC PAUL WILLIAMS,<br><br>  Defendant and Appellant. | F068995<br><br>(Super. Ct. No. BF151580A)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Michael L. Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Kane, Acting P. J., Peña, J. and Smith, J.

## INTRODUCTION

Appellant Eric Paul Williams contends the trial court erred in denying his motion to dismiss a charge of escape from the electronic monitoring program based upon *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*). We disagree with this contention and will affirm the judgment. He also contends the abstract of judgment must be amended to conform to the oral pronouncement of sentence. Williams is correct and we will direct the abstract be amended.

## FACTUAL AND PROCEDURAL SUMMARY

Williams was convicted of possession of metal knuckles, a violation of Penal Code[1] section 21810, a felony, in April 2013. Kern County has an Electronic Monitoring Program (EMP), which allows inmates to serve the remainder of their sentence on an ankle monitor. Inmates fill out an application and if they qualify for the program, they are allowed to be released on an ankle monitor. Inmates who qualify for EMP are given a rule book, which they must initial, sign, and date.

Deputy Sheriff Joseph Gregory was assigned to the EMP. Williams was allowed into the EMP and signed the rule book. Every inmate released on EMP is given a copy of the rule book; told what their curfew is; told to not change addresses or phone numbers without notifying the EMP; and told not to remove the ankle monitor or tamper with it in any way. Williams was given a curfew and instructed he had to be home between 3:00 p.m. and 7:00 a.m. The EMP records showed Williams was to be residing at 400 White Lane, apartment 93; his phone number also was on file.

On September 9, 2013, around 3:30 a.m., Kristin Forester made a call from the Kern County jail to Williams. During the telephone call, Williams told Forester, "my monitor is coming off right fucking now" and "that's the only way I'm gonna fucking

---

**1** References to code sections are to the Penal Code unless otherwise specified.

stay out." Williams later told her, "My monitor just went out the fucking window on White Lane."

On September 9, 2013, at approximately 4:00 a.m., Gregory received an alert from the ankle monitoring system pertaining to the monitor assigned to Williams. Gregory reviewed the information in the system regarding the address and curfew for Williams. Gregory and another deputy, Jason Nelson, went to Williams's address on White Lane at around 6:50 p.m., when Williams should be home according to his curfew. No lights were on in the residence, no noise was coming from the apartment, and no one answered when the deputies knocked.

On September 10, 2013, Deputy Timothy Monsibais went to an apartment complex; he had received information that a person who had an outstanding warrant for arrest was hiding at that location. Monsibais and his partner, Sergeant Gomez, walked around the apartment complex; two front apartments were occupied, two back apartments were vacant. As they went back through the apartment complex, Monsibais heard voices coming from one of the apartments that was supposedly vacant.

Gomez knocked on the door of the apartment. The door was answered; Monsibais found Williams inside. Williams was not wearing an ankle monitor. Monsibais arrested Williams and placed him in handcuffs. Williams was transported to the jail, but the nurse declined him for medical reasons and Williams was transported to Kern Medical Center.

Around 8:15 p.m. on September 10, 2013, Deputy Anthony Diehm contacted Williams at Kern Medical Center. Diehm issued *Miranda*[2] warnings. Williams indicated he would waive his rights and speak with Diehm. Diehm recorded the conversation and it was played for the jury. Diehm testified that Williams did not appear groggy or tired; he appeared alert and his answers were coherent. Diehm asked Williams why he had removed the ankle monitor and Williams responded, "I just panicked." Williams also

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

stated he was concerned law enforcement was coming for him because his door had been kicked in twice that week.

On September 16, 2013, around 10:30 a.m., Gregory contacted Williams, who was still at Kern Medical Center. Williams was in custody. Williams told Gregory that he panicked and cut off the ankle monitor. Williams stated he threw it in a trash can near South H and Ming. Williams acknowledged he had signed the EMP rule book and knew he could be charged with escape if he left his residence without permission.

On November 27, 2013, an information was filed charging Williams with escape from the electronic monitoring program, in violation of section 4532, subdivision (b)(1). The information alleged that Williams had served four prior prison terms, within the meaning of section 667.5, subdivision (b).

A jury trial commenced on January 27, 2014. The following day, Williams filed a motion to dismiss pursuant to *Kellett.* Defense counsel argued at the hearing on the motion that the escape charge should be dismissed because it was "intricately tied together" with drug charges that had been filed separately, which was a violation of the rule articulated in *Kellett*.

The basis of the motion was that on September 11, 2013, Williams had been charged with possession of a controlled substance and possession of a controlled substance for purposes of sale. The charges were based on reports filed by Monsibais and Diehm; these same reports documented the escape from the EMP. On October 18, 2013, Williams pled guilty to possession of a controlled substance for purposes of sale. Williams was charged with escape from the EMP on November 13, 2013.

Defense counsel argued that the escape charge is "essentially amounting to double jeopardy" because the "same evidence in that case is being brought up again, being relitigated in order to make a new prosecution" against Williams on the escape charge. The trial court asked defense counsel if he could "point to any alleged act on the part of defendant that would constitute an element of the crime in both instances? I can't think

4.

of one." Defense counsel responded that the drug offense was the motive for removing the ankle monitor, but acknowledged that motive is not an element of either offense.

The People maintained that separate prosecutions were permissible because the controlled substance and escape offenses "were two separate crimes." The People further argued that motive had no bearing on the *Kellett* issue and cutting "off a monitor has absolutely nothing to do with drug sales regardless of when it occurs." The People noted the "only thing that we have tying these two cases together is the defendant's own confession" because Williams stated during an investigation for other crimes that he had committed the escape offense.

Ultimately, the trial court denied the motion reasoning that while the People could have properly joined the charges in a single case, the fact that separate cases were filed did not compel a conclusion that *Kellett* was violated. The trial court articulated two elements to *Kellett*: (1) the prosecution is or should be aware of more than one offense; and (2) the same act or course of conduct plays a significant part in both offenses. The trial court found that the second element was not present. The act of escape is established by cutting the electronic monitor and being at large without the monitor; coincidentally, while at large, Williams committed the drug offense. The trial court concluded that these facts did not come "close to establishing that the same act or course of conduct plays a significant part" in both offenses.

On January 30, 2014, the jury found Williams guilty of escape from the EMP. The trial court found true that Williams had served three prior prison terms; the fourth prior prison term allegation was dismissed on motion of the People in the interests of justice.

Williams was sentenced to the mid-term of two years for the escape conviction, a consecutive one-year term for each of the prison priors, and a consecutive eight-month term for the possession of metal knuckles offense for which Williams had been on early release and EMP. Williams filed a timely notice of appeal on February 27, 2014.

## DISCUSSION

Williams contends the trial court erred in denying his motion to dismiss for *Kellett* error. He also contends the abstract of judgment should be corrected to reflect the oral pronouncement.

### I. No *Kellett* Error

In assessing a claim of *Kellett* error, an appellate court reviews "factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to the People." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.) The legal question of whether, under the facts as found, section 654 applies to bar prosecution is subject to de novo review. (*People v. Valli*, *supra*, at p. 794.)

Subdivision (a) of section 654 bars both multiple punishment and multiple prosecutions, and states:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

The prohibition against multiple punishment is separate and distinct from the prohibition against multiple prosecutions. In *Kellett*, the California Supreme Court addressed section 654's prohibition against multiple prosecutions.

The *Kellett* court held that when "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause." (*Kellett*, *supra*, 63 Cal.2d at p. 827.) Failure to join all such offenses in a single proceeding will result in a bar to subsequent prosecution of the omitted offense if the earlier proceeding resulted in either acquittal or conviction and sentence. (*Ibid.*)

6.

As the trial court stated, Williams's *Kellett* claim fails because the same act or course of conduct does not play a significant part in the escape offense and the drug offense. Evidence supporting the escape offense was the jail call from Forester to Williams, during which Williams told Forester, "my monitor is coming off right fucking now" and "that's the only way I'm gonna fucking stay out." Williams later told her, "My monitor just went out the fucking window on White Lane." Other evidence was the alert from the ankle monitoring system pertaining to the monitor assigned to Williams; then finding Williams not at home when he should be according to his curfew.

Additional evidence was finding Williams at a location not his home, past curfew, with no ankle monitor. Finally, Williams admitted cutting off his ankle monitor and throwing it in a trash can. Williams acknowledged he had signed the EMP rule book and knew he could be charged with escape if he left his residence without permission.

In *People v. Flint* (1975) 51 Cal.App.3d 333, the appellate court established an evidentiary test to see if the *Kellett* criterion, that the same act or course of conduct plays a significant part with respect to each crime, is met. (*People v. Flint*, *supra*, at pp. 336-338.) If the evidence needed to prove one offense necessarily supplies proof of the other, *Kellett* would mandate the two offenses be prosecuted in the same proceeding. (*People v. Hurtado* (1977) 67 Cal.App.3d 633, 636.) None of the evidence establishing the escape offense relied on evidence of possession of drugs or possession of drugs for sale. The evidence "was for the most part mutually exclusive." (*Id.* at p. 637.) The only common ground was that Williams committed the drug offense during the period of time he had escaped from the EMP; thus any overlap is trivial at most.

That Williams's motive for escaping from the EMP might have been to evade detection and charges for the drug offenses, or that some of the officers would need to testify in both cases, does not mandate the offenses be prosecuted together. In *Hurtado*, the only common ground was that the defendant committed a vehicular offense at the same time as a drug offense. The appellate court concluded that such a "trivial overlap"

did not require a single prosecution and separate prosecution did not violate *Kellett.* (*People v. Hurtado*, *supra*, 67 Cal.App.3d at pp. 636-637.)  Here, Williams committed the drug offense while an escapee from the EMP.  This "trivial overlap" did not require a single prosecution of the offenses.  (*Ibid.*)

The trial court did not err in denying the motion to dismiss.  (*People v. Valli*, *supra*, 187 Cal.App.4th at p. 794.)

## II. Abstract of Judgment

Williams contends the abstract of judgment should be modified to delete the laboratory and drug program fees because those fees were not imposed by the trial court, and could not be imposed for the escape offense.  We agree that the abstract needs to be corrected.

If there is a discrepancy between the oral pronouncement and the abstract of judgment, the oral pronouncement controls.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)  This is also true of any discrepancy in the fines.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 387.)

The abstract reflects that an $80 laboratory fee and a $60 drug program fee were imposed.  The trial court actually imposed an $80 court operations assessment pursuant to section 1465.8 and a $60 conviction assessment pursuant to Government Code section 70373, neither of which are reflected in the abstract of judgment.

It appears that the court operations assessment and the conviction assessment were mistakenly recorded as laboratory and drug program fees.  We will direct that the abstract of judgment be modified to reflect the trial court's oral pronouncement of fees and assessments.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment in accordance with this opinion and disseminate the same to the appropriate authorities.

8.